IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SYED AZEEM,

                    Plaintiff,

          v.

ERIC K. SHINSEKI, Secretary of
Veterans Affairs,

                    Defendant.

Case No. 09 C 6971

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Secretary of Veterans Affairs Eric K. Shinseki's (the "VA") Motion for Summary Judgment on Plaintiff Syed Azeem's ("Azeem") retaliation claims brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq*. For the reasons stated herein, the motion is granted.

### I. BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 statements, deposition testimony, and exhibits, with disputes noted where applicable. Azeem is a federal employee, who, at the time of the events of this lawsuit, worked at the Edward Hines Jr. VA Hospital ("Hines Hospital"). Shinseki is named in his official capacity as Secretary of the Department of Veteran's Affairs.

Azeem was a program specialist in the radiotherapy department at Hines Hospital. At that time, the Radiotherapy Department was

an outpatient clinic jointly staffed by VA employees and doctors from Loyola University Medical Center.

In early 2006, Azeem filed a formal administrative complaint alleging he was discriminated against based on his race (Asian) when the VA refused to upgrade his position following a desk audit that occurred in December 2001. The VA issued a final agency decision finding that his claim was time-barred, the Equal Employment Opportunity Commission (the "EEOC") denied his appeal, and a federal lawsuit by Azeem was dismissed on the same basis. *Azeem v. Nicholson*, No. 07 C 255, 2008 WL 2557463, at *4 (N.D. Ill. June 23, 2008).

The instant lawsuit stems from administrative complaints Azeem filed in April and August 2006, which alleged that his supervisors retaliated against him for complaining about race discrimination. An Administrative Law Judge granted summary judgment in favor of the VA on all of his claims. This lawsuit followed.

Azeem initially alleged several instances of retaliation, but pursues his claims in this court only as to two incidents. First, Azeem contends that in May and June 2006, he was issued a letter of counseling, a letter of detail, and removed from his duties as a Contracting Officer Technical Representative ("COTR"). The COTR job required him to monitor and validate the accuracy of bills submitted to the VA by Loyola for radiation services provided by Loyola employees working in the radiotherapy department. Next,

- 2 -

Azeem contends he was retaliated against because he was not selected for a Lead Program Analyst position in May 2007.

As to the letter of counseling and letter of detail, Plaintiff does not clearly identify who the relevant decision-makers were, but the letter of counseling was signed by Jane Moen ("Moen"), Azeem's supervisor and a business manager at the VA, and issued after consultation with her supervisor, Dr. Brian Schmitt ("Schmitt"). The letter of detail was signed by Jeff Gering ("Gering"), then the Associate Director of Hines Hospital. Schmitt testified that the decision to detail Azeem to another position was made by the Director's Office and that he did not influence the Director's Office to transfer Azeem. Schmitt 2007 Dep. at 12:16-20.

Shortly after Azeem filed his EEO complaint regarding the VA's refusal to upgrade his position, Moen and Schmitt attended a meeting with Azeem. After the meeting, Schmitt and Moen asked Azeem to stay and spoke with Azeem about the complaint. Schmitt and Moen admit that they were upset upon learning that they had been named in the discrimination charge, and Schmitt told Azeem that it was "strictly going to be business now." Azeem maintains that Schmitt told him that he would be "on the defensive" from that point forward, although Schmitt does not remember making this particular comment.

Azeem says he interpreted this as accusatory, and felt uncomfortable and intimidated. For his part, Schmitt contends that he made the "strictly business" comment because he felt that he and Moen had gone out of their way to help Azeem with his request to upgrade his position because of their personal relationship with him. Schmitt 2007 Dep. at 25:18-26:1. Schmitt said he did nothing to retaliate against Azeem, but was generally more cautious in how he interacted with Azeem from that point forward. *Id.* at 26:6-11.

After Azeem reported his discomfort with the conversation to the EEO office, an EEO counselor told Moen that she had not been given authorization to speak to Azeem about the matter and should leave it to the EEO office in the future.

The letter of counseling, the letter of detail, and removal of Azeem's COTR duties followed an audit of Azeem's billing practices in the spring of 2006. The VA contends that it conducted the audit because it was concerned about recent increases in radiology costs. It maintains that it took these actions against Azeem because it found billing discrepancies during the audit and because Azeem reacted poorly to the audit findings.

The audit was ordered by Jeff Gering based on Moen's request for additional funding in the radiotherapy department. Gering asked Donna Fagan ("Fagan"), then the Associate Chief of Patient Administration Service, to perform an audit to find out why costs in that radiotherapy department were escalating. At the time he

requested the audit, Gering was aware that Azeem had filed EEO complaints in the past, but Azeem was not in Gering's chain-of-command. Fagan was given discretion to determine why costs were increasing in the department. She worked with Moen on the audit. Azeem avers that Moen's attitude toward him, which had been cordial, changed following his discrimination complaint. For example, he averred, Moen and Fagan arrived at the clinic in his absence and inquired about his punctuality, which they had never done before.

The audit initially was directed at why the VA was being charged more under the contract with Loyola, but Fagan ended up focusing on Azeem's work as a COTR. Moen and Fagan found billing discrepancies, but they were unable to put a dollar figure on these discrepancies.

Azeem contends that the cost of the contract had been increasing since May 2005, but that Moen did not raise an issue about Azeem's performance until after he filed an EEO complaint. Azeem points out that the Radiotherapy Department had purchased a piece of equipment that delivered a treatment known as Intensity Modulated Radiation Therapy ("IMRT"), and notes that this equipment contributed to higher costs for the Radiotherapy Department.

At any rate, the audit did not go well for Azeem. An employee named John Clifton ("Clifton") began accompanying Moen and Fagan to the auditing sessions. When Azeem was stripped of his COTR duties,

they were assigned to Clifton. Moen contends that Azeem was defensive when they discussed the audit, frequently interrupted her, and denied the existence of any problems. As a consequence, Azeem received a letter of counseling and was assigned to another position.

Azeem contends that he was eager to explain how he went about auditing the Loyola bill and did his best to cooperate with Moen. He contends that Moen and Fagan failed to provide him with specifics about the discrepancies they found, or to show him any documents. Azeem further contends that the audit was poorly done and that some of the alleged errors found by Moen and Fagan were based on their misunderstanding of the billing system Azeem used. At the conclusion of the audit, Moen prepared a summary of the findings for VA managers, and one of the concerns identified was speculation that overcharges occurred.

On May 31, 2006, Moen informed Azeem that he would no longer serve as a COTR. On June 7, 2006, Moen gave Azeem the letter of counseling and a letter of detail, the latter of which transferred him out of the Radiotherapy Department. Later that month, Gering informed Azeem that he would be detailed for a year to the Director's Service Safety Section. Azeem remained in that position for three years and then obtained a VA job outside of Hines Hospital.

The second alleged incident of retaliation involves the VA's decision not to select him for a Lead Program Analyst position on November 7, 2007. Azeem was one of twelve applicants for the position whose applications were reviewed by Moen and Dr. Bruce Guay ("Guay"). None were interviewed, the job was not reposted, and it was later filled by an administrative resident who worked in the Director's Office. In an affidavit, Guay said that he was aware of Azeem's prior EEO complaints when he reviewed the applications, but that he and Moen did not discuss the complaints. Guay said that Azeem was passed over because his writing skills were not strong and because he lacked experience with the Advanced Clinical Access model that was used to manage VA facilities. Guay said that the decision not to hire Azeem was not a reprisal for his prior complaints. Moen gave the same reasons for the decision not to hire Azeem, saying that she and Guay found his writing skills deficient.

## II.  **LEGAL STANDARD**

Summary judgment is appropriate where the record shows that there is no genuine dispute as to an issue of material fact. FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on summary judgment, the Court does not weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *Id.* at 249. In addressing a motion for summary judgment, the court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). A genuine issue of fact, however, is not shown by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). To support their positions that a genuine issue of material fact does or does not exist, the parties may cite to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers, or show that

the materials in the record do or do not establish a genuine dispute. FED. R. CIV. P. 56(c).

### III. ANALYSIS

The VA moves for summary judgment on Azeem's Title VII retaliation claim. Under Title VII, unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing discrimination. 42 U.S.C. § 2000e-3(a); *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003). As noted above, Azeem complains about: (1) the letter of counseling, the letter of detail, and removal of his COTR duties; and (2) the rejection of his application for the Lead Analyst position. A plaintiff can prove a Title VII retaliation claim under either the direct method of proof or the indirect method of proof. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662-63 (7th Cir. 2006). Azeem fails under both methods.

### A. Direct Method

To establish a retaliation claim under the direct method, a plaintiff must show that "(1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) [there was] a causal connection between the two." *Tomanovich*, 457 F.3d at 663 (quoting *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)). Under the "direct method," the plaintiff must present direct or circumstantial evidence that creates a "convincing mosaic of discrimination." *Winsley v. Cook*

*Cty.*, 563 F.3d 598, 604 (7th Cir. 2009)(quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). Direct evidence is evidence that if believed by the trier of fact, would prove the fact in question "without reliance on inference or presumption." *Rogers*, 320 F.3d at 753 (internal citations and quotations omitted). Direct evidence in this context usually amounts to an admission by decision-makers that their actions were "based upon the prohibited animus." *Id.* This type of admission rarely occurs, and Azeem's case is no exception. *Id.*

As such, he must rely on circumstantial evidence of discriminatory intent. Circumstantial evidence allows a jury to determine a decisionmaker's intentional discrimination "through a longer chain of inferences." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008)(internal citations omitted). Circumstantial evidence demonstrating intentional discrimination includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. *Id.* at 672.

- 10 -

Here, there is no dispute that Azeem engaged in protected activity when he filed charges EEO complaints. Defendant does not challenge Azeem's contention that he suffered an adverse employment action, but neither party devotes much time to this issue. Although written reprimands, like the letter of counseling Azeem received, are typically not considered adverse actions in and of themselves, here the letter was accompanied by the removal of certain job duties and the transfer to another position, so the Court will consider this series of events to be an adverse action. *See Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 663 (7th Cir. 2011). Additionally, the VA's decision not to select Azeem for the Lead Analyst position may amount to an adverse action, assuming that this position was "objectively better" than the position Azeem held at the time. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 615 (5th Cir. 2007).

Regardless, given the VA's admission that Azeem was subject to adverse employment actions, Def.'s Mem. in Supp. of Mot. for Summ. J., at 8, the critical issue is whether there is a causal connection between Azeem's complaint of racial discrimination and the adverse actions. *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010).

Azeem possesses no direct evidence of retaliation, so this Court must determine whether the circumstantial evidence he presents is sufficient to create a genuine issue for trial. As a

preliminary matter, the Court rejects Azeem's argument that the
Defendant waived any argument that he lacks direct evidence of
retaliation by addressing only the indirect, burden-shifting method
in his opening brief.  The VA did argue that Azeem had no direct
evidence pointing to retaliation as the reason for the adverse
actions taken by the VA.  Def.'s Mem. in Supp. of Mot. for Summ. J.
at 8.  It is well-established that a moving party may discharge its
burden on summary judgment by pointing to an absence of evidence to
support the non-moving party's case.  *Outlaw v. Newkirk*, 259 F.3d
833, 837 (7th Cir. 2001).  So the Court will not find waiver.  The
Court will address the factual underpinning of each of Azeem's
retaliation claims under the direct method.

### 1.  *Letter of Counseling, Letter of Detail and Removal of Duties*

Azeem alleges first that the timing of these actions was
suspicious.  Azeem formalized his EEO charge in this case in
January 2006, and Moen and Fagan began investigating his billing
practices in March, which culminated in the removal of Azeem's COTR
duties, the Letter of Counseling, and the Letter of Detail in June.

Suspicious timing alone is generally insufficient to establish
a genuine issue of material fact.  *Hobbs v. City of Chi.*, 573 F.3d
454, 464 (7th Cir. 2009).  However, if an adverse action comes very
closely on the heels of a protected act, an inference of causation
may be sensible.  *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312,
315 (7th Cir. 2011).  Deciding whether the timing makes an

inference of retaliation reasonable is a context-specific inquiry. *See id.* at 314-15 (where plaintiff was fired immediately after handing supervisor a note complaining of discrimination, a jury could find a retaliatory motive).

Azeem relies on *Phelan v. Cook Cty.*, 463 F.3d 773, 788 (7th Cir. 2006), in which the Court found that a three-month span between a plaintiff's initial complaint about sexual harassment and the initiation of termination proceedings, along with other evidence of retaliation, raised a question of fact for the jury. However, in *Phelan*, the plaintiff also had evidence that her immediate supervisor threatened to fire her if she continued to complain about harassment and that various employees warned her there would be adverse consequences for her complaints. *Id.* In the typical circumstance, a span of several weeks or months between a complaint of discrimination or harassment and an adverse job action will not enough to suggest a retaliatory motive for the firing. *See Benuzzi*, 647 F.3d at 666 (finding two-month time frame insufficient to create triable issue); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734-35 (7th Cir. 2008)(similarly rejecting argument that seven-week interval between complaint and termination). Here, in addition to the timing of his firing, Azeem points to his previous clean employment record as well as the reaction of Moen and Schmitt when they learned that he had filed an EEO complaint.

Azeem notes that he received a "fully successful" performance rating from Moen for the period ending on September 30, 2005, and had not received any letters of counseling prior to June 2006. (The "fully successful" rating was in the middle of the performance evaluation scale; the Court interprets this to mean that Azeem's performance was deemed average.)

Azeem also points to the fact that he was nominated for an award in 2004 for what the nominator, Dr. Joseph Lentino, described as "excellent managerial skills." Mary Skladanek, a Contracting Officer for the VA, sent Schmitt and Moen an email in February 2005 praising Azeem's work on the Loyola contract. In it, she said Azeem was provided "invaluable assistance and . . . superb technical support." Similar praise was bestowed upon Azeem in a February 2005 letter by Dr. Glen Glasgow, head of the Division of Medical Psychics at Loyola.

The VA admits that Azeem's prior performance evaluations were satisfactory, but points to evidence in the record that VA management had become concerned in October 2004 about Azeem's administration of the radiation therapy program when Azeem ordered new equipment that did not have the necessary software included, resulting in an unexpected expense of $250,000.

The earlier compliments and satisfactory performance reviews are of limited help to Azeem because they do not address the time period at issue here. Nor do comments from others shed much light

- 14 -

on how Azeem's performance was perceived by the apparent decision-makers, Moen, Schmitt, Gering, and Guay. This issue usually arises under the indirect method when an employee attempts to show that the employer's proffered reasons for taking an adverse action were merely a pretext for discrimination. In that context, the Seventh Circuit has held that affidavits from co-workers and former supervisors stating that the employee's performance was satisfactory were not enough to create an issue of fact as to whether the employer sincerely believed otherwise. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994). Similarly, here, the evidence Azeem presents does not go to the issue of whether the audit was a cover for intentional discrimination.

Plaintiff relies on *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005), in which the court held that "sudden dissatisfaction with an employee's performance after that employee engaged in a protected activity may constitute circumstantial evidence of causation when combined with other circumstantial evidence." *Culver*, however, is distinguishable from the instant case because the "sudden dissatisfaction" in that case occurred over a period of three days and because the supervisor had warned the plaintiff not to complain of discrimination. *Id.* at 547. This case does not present such a rapid reversal given that the audit did not begin until March, three months after Azeem's initial

complaint to the EEO officer.  Further, Azeem admits that the audit initially was directed not at Azeem's job performance, but at determining why the cost of the Loyola contract was increasing.

Azeem contends that Moen and Schmitt's remarks upon learning he had filed an EEO complaint amounted to an attempt to dissuade him from such activity, which constitutes circumstantial evidence of retaliation.  The parties disagree as to what exactly was said at the meeting, but taking Azeem's characterization of what was said as true, they amount to stray remarks that do not constitute evidence of retaliation.

When a plaintiff offers an employer's stray remark in a discrimination case, it is necessary "to demonstrate 'some nexus' between the remark and the challenged employment decision." *Scaife v. Cook Cty.,* 446 F.3d 735, 741 (7th Cir.2006)(*quoting Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 444 (7th Cir. 1997)). Such a statement may suffice as evidence of retaliation if it: "(1) was made by the decision-maker, (2) around the time of the decision, and (3) referred to the challenged employment action." *Mach v. Will Cty. Sheriff,* 580 F.3d 495, 499 (7th Cir. 2009).

Azeem fails to identify clearly the relevant decision-makers for the various actions taken in regard to the removal of his COTR duties and the transfer to another office.  It appears that Moen and Schmitt were the decision-makers at least in regard to the letter of counseling.  The record indicates that Moen stripped

- 16 -

Azeem of his COTR duties at the request of the director's office, although it is unclear who decided made this decision. Finally, Gering, and perhaps others in the director's office, apparently decided to detail Azeem to the Safety Section.

Plaintiff does not address the issue of whether Moen's and Schmitt's actions should be imputed to others in management. However, if he could show that Schmitt and Moen acted with discriminatory animus and that their actions related directly to the adverse actions taken against him, Azeem could pursue a cat's paw theory. *See Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1192 (2011). Here, the VA does not dispute that these actions stemmed from the audit findings, so if Azeem could show that Moen and Schmitt used the audit results as a cover for intentional discrimination, he would be able to survive summary judgment.

However, he is unable to demonstrate discriminatory animus on their part. It may have been ill-advised for Moen and Schmitt to approach Azeem about the EEO complaint without authorization from the EEO office. But even by Azeem's account, they never threatened him or demanded that he stop filing EEO complaints. Nor is it altogether surprising that they were unhappy about the complaint, given their belief that they had gone out of their way to help Azeem. Their expressions of disappointment, and Schmitt's statement that it would was "strictly going to be business now," made months before the challenged actions in this case, are simply

- 17 -

not the types of statements that have been found to be evidence of discriminatory intent. *Cf. Komal v. Arthur J. Gallagher & Co.*, No. 09 C 6619, 2011 WL 2415725, at *6 (N.D. Ill. June 13, 2011)(direct evidence of retaliation included fact that supervisor tried to convince plaintiff to drop his complaint, and failing that, pressured him to resign); *Owens-Floyd v. City of Chi.*, No. 05 C 3182, 2007 WL 4365324, at *4-5 (N.D. Ill. Dec. 11, 2007)(supervisor's comment that subordinate should stop filing charges was direct evidence of discrimination).

Further, Azeem acknowledges that the audit was requested not by Moen or Schmitt but by Gering due to concerns about rising costs in the Radiotherapy Department. Azeem contends, however, that there were several aspects of the audit that could lead a jury to believe that the manner in which the audit was conducted, and its results, were retaliatory.

Azeem makes what is essentially a pretext argument using the direct method. *See Lockard v. Fid. Info. Servs., Inc.*, 722 F.Supp.2d 994, 1002 (N.D. Ill. 2010)(holding that pretext may serve as circumstantial evidence of discriminatory intent). To demonstrate pretext, he must show that (1) the VA's nondiscriminatory reasons for its actions were dishonest; and (2) its true reasons were based on discriminatory intent. *Everett v. Cook Cty.*, 704 F.Supp.2d 794, 812 (N.D. Ill. 2010). This means that the plaintiff must provide evidence not only that his

employer's grounds for firing him were baseless, but must at least raise an inference that the real reason was discriminatory. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 404 (7th Cir. 2008).

Azeem contends that Moen and Fagan conducted the audit so poorly that a jury could infer that they did not believe Azeem actually committed the errors they alleged. He also contends that the VA failed to follow certain policies in regard to his reassignment, which also could lead a jury to infer that their stated reasons for stripping him of his COTR duties and reassigning him to another department were lies.

For example, he contends that Moen already knew that the cost of the new IMRT procedure was what drove up costs within the department. Instead of focusing on that, Moen and Fagan focused on billing discrepancies related to Azeem's work, but were unable to come up with a figure as to how much money the VA lost because of those alleged discrepancies, Azeem contends. He also criticizes the VA's failure to consult Skladanek, the contracting officer who praised his work, during the audit process. He contends that Skladanek was an expert on the Loyola contract. However, Azeem must go further than showing that Moen and Fagan made mistakes during the audit process, assuming they did. He must show that their criticisms of his work were made up in an effort to cover retaliatory intent. His evidence is insufficient to raise such an inference.

Further, while an employer's deviations from its stated policies can provide circumstantial evidence of discrimination, *see Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 723 (7th Cir. 2005), Azeem fails to provide evidentiary support for his allegation that he should have been allowed to formally contest the allegations in the letter of counseling before being assigned to a new department. In sum, Azeem has failed to present direct or circumstantial evidence that creates a "convincing mosaic of discrimination," *Winsley*, 563 F.3d at 604, so his claim in regard to his reassignment cannot go forward.

## 2. *Lead Analyst Position*

Azeem contends that when Moen and Guay passed him over for the Lead Analyst position nine months after his formal complaint of discrimination, it followed a "pattern of antagonism," including Moen's and Schmitt's comments and management's actions following the audit.

However, because Azeem has not brought forth sufficient evidence that these actions were taken with a discriminatory purpose, he cannot use them to bolster his claim that he was wrongfully passed over for the Lead Analyst position. Further, Azeem fails to bring forth any evidence that Guay's proffered explanations for the failure to select Azeem for the position were a cover for discrimination. He contends that the failure to interview any of the eleven candidates was an "irregularity," but

- 20 -

offers no evidence to support this contention. Azeem further contends that he was the most qualified person for the position, but his subjective perception of his skills does him no good here. This Court is not a "super-personnel department" that exists to decide whether the employer made the correct choice. *Hobbs*, 573 F.3d at 462. So this claim fails under the direct method as well.

### B.  Indirect Method of Proof

Azeem also seeks to pursue his claims under the indirect, burden-shifting method. To establish a claim for retaliation under the indirect method of proof, a plaintiff must show: (1) that he engaged in statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite meeting his employer's legitimate expectations, he suffered a materially adverse employment action; and (4) he was treated less favorably than "similarly situated employees who did not engage in statutorily protected activity." *Atanus*, 520 F.3d at 677. Failure to satisfy any element dooms the claim. *Id.* Once the employee establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The burden then shifts back to the employee to demonstrate that the employer's reason is pretextual. *Id.* A failure to demonstrate pretext at the summary judgment stage also dooms plaintiff's claims. *Id.*

First, Azeem fails to identify any similarly situated individuals who were treated more favorably. In his response, he contends that "various individuals identified in the record," are similarly situated, but he does not name any of them. It is not this Court's job to scour the record for Plaintiff. Azeem also contends that he addresses the "similarly situated" question in his discussion of pretext, but the Court fails to see how he does so. Further, even if Azeem could establish a *prima facie* case under the direct method, the VA has offered legitimate, non-discriminatory reasons for its actions. For the reasons discussed above in relation to the direct method, Azeem has failed to bring forth sufficient evidence to show that these reasons were a pretext for discrimination. As such, Defendant is entitled to summary judgment on all of Azeem's claims.

## IV.  CONCLUSION

For the reasons stated herein, the Secretary of Veterans Affairs' Motion for Summary Judgment [44] is granted.

**IT IS SO ORDERED.**

_____

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 12/28/2011

- 22 -